Allen *v.* Hickson.   Harrison et al. *v.* Sloan.

[NOVEMBER TERM, 1797.]

HARRISON and others *against* SLOAN, Manager, &c.

ON CERTIORARI.

Where referees have been appointed under the directions of an act of the legislature, the court will not examine into the legality of this appointment until the referees have proceeded to act.

It appeared, that by an act of assembly, passed 2d of June, 1790, the managers of certain meadows, in the county

of Gloucester, called Newton meadows, were authorized to make a suggestion to the Court of Common Pleas, who were empowered to appoint three or more referees to settle the differences, &c., who after hearing the allegations, proofs, &c., were to make an award which should be made a judgment of the said court, and be final between the managers and the owners of the meadow.

James Sloan, the manager, made an application, under this act, to the Common Pleas of Gloucester county, and in March, 1797, the court appointed referees. Harrison, and the other plaintiffs, considering themselves aggrieved by these proceedings, brought this *certiorari*, and on a rule, which had been obtained by the defendant, to shew cause why this *certiorari* should not be quashed, *quia improvide*, &c., it was argued by

*Lawrence, Woodruff,* (attorney-general,) and *R. Stockton,* for the rule, and

*Griffith, Leake* and *Davenport,* against it.

*For the motion.* The complainants have proceeded too early, and before any ground has been furnished them to say that they have sustained injury. No *certiorari* will lie until the final act of the court, to wit, the judgment on the award of referees. In *Rex* v. *Nicolls,* 2 *Str.* 1227, a rule to shew cause why the *certiorari* should not be quashed, on the ground that it was brought before the judgment of the inferior court, was made absolute, and the cause remitted to the sessions. *Gilb. on Exec.* 206.

Whenever the superior court cannot proceed in the cause, they will not permit a *certiorari* to issue, because when once it is removed it cannot be sent back, and thus the law would be evaded. *Sand's case,* 1 *Salk.* 143. In the present case, if a *certiorari* can be taken out *pendente lite* it stops the inferior court altogether: this court must either quash or

affirm, *in toto*, if it should affirm, the proceedings could not be remanded, the whole business must be commenced anew. A *certiorari* for the removal of a presentment before justices in Eyre, of a matter which is punishable by the forest law alone, shall not be granted before conviction, for if so, the offence would go unpunished. 1 *Bac. Abr.* 560, 2 *Hawk. P. C.* 408.

It is not too late to object to the issuing of a *certiorari* after it is actually returned, for "if the *certiorari* issued, improvide, the court can order it to be superseded, and the return taken off the file," of which Lord Mansfield said, in *Rex* v. *Wakefield*, 1 *Bur.* 485–9, there had been several instances. *Rex* v. *Morely*, 2 *Bur.* 1040. In case of *Woodward* v. *Potts*, the *certiorari* to the Orphans' Court was quashed, because this court could not exercise the powers committed to that tribunal by the act of assembly.

Against the rule it was argued—That so far as to furnish a ground for the interposition of this court, the Common Pleas had already acted; they had made a complete order. The appointment of referees was the act complained of as irregular, and so far the powers of the inferior tribunal were spent. The question is as to the legality of this appointment; if it is illegal it would be preposterous to wait until the expenses attending the arbitration were incurred, before the complaint was made. Convenience and reasonableness are clearly in favor of the proceeding that has been adopted, because if the act already done is unwarranted, time and money would be saved the parties: if legal, there would be no difficulty in setting the inferior tribunal free, which could as readily be done by quashing the *certiorari* on the merits, as in this manner on motion; or they might then order the *certiorari* and return taken from the files, or unless some difficulty now unseen should exist, a *procedendo* might issue.

In the *King* v. *Reeve*, 1 *Bl. Rep.* 231, Lord Mansfield, observed, "this court hath an inherent right to issue *certio-*

*rari*, in order to keep all inferior courts within due bounds. If the justices below have done right, you may shew it and quash the *certiorari;* but if there be the least doubt, this court will grant the writ. The *King* v. *Whitbread, Dougl.* 548, shews that a *certiorari* is a proper course to ascertain, whether or not a court has jurisdiction; and if it has not every thing done by it, is nullified, (*Geyger* v. *Stoy,* 1 *Dall.*) and the earlier its proceedings are stopped, and the question of jurisdiction settled, the better it is for all the parties interested.

The act under which these referees were appointed, is clearly unconstitutional, hostile to the fundamental principles of our government, and contrary to the rights of our citizens. The right to a trial by jury, before our property or our rights can be wrested from us,. is one of the most sacred privileges of an American citizen, and independent of any provision in the constitution, it would be beyond the powers of a limited legislature to curtail its exercise. But in the 22d article of the constitution of New Jersey, it is expressly declared, "that the inestimable right of trial by jury shall remain confirmed, as part of the law of this colony for ever." In what manner can this privelege be more clearly and palpably violated, than by such a legislative act, as that upon which these proceedings are founded; which enacts that in case of disputes, the Court of Common Pleas, upon an *exparte* application, may appoint referees, who shall be empowered to make a final decision upon the case? This exception we regard as fatal.

In reply, this court will never interfere with the proceedings of an inferior tribunal, unless it is itself vested with power to afford the necessary relief. This is not contended for in the present case, and it will surely be early enough, when the award of the referees has been made a judgment of the Common Pleas.

With regard to the objection that has been urged from the constitution, it will be sufficient to state, that independent

Harrison et al. *v.* Sloan.

of that instrument, the legislature of every community must be vested with power to vary or modify the mode of terminating private differences, whatever they may be : that the trial by jury might be extended to new subjects, and others might be withdrawn from this tribunal. The constitution itself furnishes no exception in a case like the present. It " confirms the trial by jury ;" that is, it directs it to remain as it had already been established. Every subject of litigation, which, previously to the ratification of that instrument, had been usually subject to a different kind of determination remained so still.

The custom of banking and draining large bodies of meadow, by a single bank, had prevailed in this state, from the earliest periods, and had given rise to numerous companies, by whom these necessary improvements had been constructed and supported. Numerous acts of the legislature had in consequence been passed anterior to the resolution, similar in principle and in provision, to that under consideration; and it is perhaps the only mode in which disputes of this kind could be properly terminated.

Every ground of objection on this score, however, must be considered as removed, when it is recollected that the act itself states, that it was passed on the application of the owners of these meadows, and the whole proceedings are therefore to be looked upon as the voluntary appointment of referees by the parties in person. If the constitution guarded the rights of the parties from any legislative violation, and secured to them for ever the benefit of a jury trial, it was surely competent for them to waive this advantage, and to consent to another mode of adjudication.

*Leake* cited *Rex* v. *Williams*, 1 *Bur.* 385; *Rex* v. *Hartshorne*, 2 *Bur.* 745 ; 1 *Sellon's Prac.* 501, to shew that consent cannot cure defects of jurisdiction, but that all the proceedings before a tribunal without jurisdiction are void.

---

M'Donald *v.* Lawry.

Kinsey, C. J. This case will probably in its future stages, involve questions, upon which it would be equally indecorous and unjust to pass a hasty decision : these questions, however, though they have been dwelt upon in the argument, do not require our opinion at this time.

The question before us is, whether this *certiorari* ought to be quashed ? Whether a *certiorari* is, or is not sustainable, is, as we conceive, always a matter addressed to the sound discretion of the court.   In this case we do not think that we are called upon, at this early stage of the proceedings, to enter into an examination of all the questions that have been discussed.   I think the application premature, and am therefore of opinion the *certiorari* ought to be quashed.

Smith, J. concurred with the Chief Justice.

Kirkpatrick, J.   I am decidedly of opinion, that the *certiorari* has issued prematurely : I am also clear, that this is not the proper mode of contesting the jurisdiction of any court.   See 1 *Lilly's Abr.* 363.

*Certiorari* quashed.